19148. CARROLL *v.* ÆTNA LIFE INSURANCE
COMPANY *et al.*

DECIDED DECEMBER 14, 1928.
REHEARING DENIED FEBRUARY 21, 1929.

*Colquitt & Conyers, Sidney Smith,* for plaintiff.
*Bryan & Middlebrooks,* for defendants.

BELL, J. This was a claim for compensation by the widow of William H. Carroll. The industrial commission denied the claim, and, after unsuccessfully appealing to the superior court, the claimant brought the case to this court.

Mr. Carroll, an employee of Atlantic Ice & Coal Corporation, was required by his employer to make a trip from Atlanta, Georgia, to Jacksonville, Florida, on business for the company and it was agreed that he should go by automobile and use his own car. He left Atlanta on the morning of July 24, and was killed at about 6 o'clock that afternoon in a collision with a freight-train at a public road crossing near Alma, in Bacon county, Georgia. The insurance carrier denied liability upon the ground that his death was the result of his own violation of a penal statute of this State, as follows: "Upon approaching an intersecting highway, bridge, railroad crossing, dam, sharp curve, dugway or deep descent, or in traversing such intersecting highway, bridge, railroad crossing, dam, sharp curve, dugway or descent, the operator of a motor vehicle or motorcycle, shall at all times have said vehicle under immediate control, and shall not operate said vehicle at a greater speed than ten miles per hour." Ga. L. 1921, pp. 256, 260; Park's Code Supp. 1922, §§ 828 (uu-4).

The preponderance of the evidence before the industrial commission tended to show that Carroll approached the crossing at a speed of about 50 miles per hour, although one witness testified that the automobile was "going slow" at the time it was struck by the train. The commission, however, made no finding of fact as to the speed at which Carroll was traveling or as to the control of his vehicle except that in each respect he was violating the law. Upon this finding of fact, it was held, as a matter of law, that compensation should be denied.

The authority for this ruling was thought to be contained in section 14 of the compensation act (Ga. L. 1920, p. 167 et seq.; Park's Code Supp. 1922, § 3154(n)), in which it is provided, among other things, that no compensation shall be allowed for injury or death due to an employee's wilful misconduct, or to his wilful failure or refusal to perform any duty required by statute, the burden of proof being upon him who claims an exemption or forfeiture under this section. Assuming, without deciding, that "misconduct" as referred to in this section was intended to include the violation of a

general penal statute, and that the "duty required by statute," as mentioned in the same connection, may embrace the common duty of every person to observe and not to violate the law, rather than that these terms, so far as they may pertain to the laws of the State, were intended to have reference only to such statutory rules and regulations as may relate to the conduct of those engaged in a particular line of business, we are nevertheless of the opinion that the mere infraction of any such general penal statute would not, without more, authorize a denial of compensation. Section 14 contemplates more than a mere violation of a criminal traffic law, and more than a simple failure or refusal to perform a duty required by statute. In each case the act or omission on the part of the employee must at least be "wilful," and this is a matter of proof not necessarily inhering in the evidence of the transgression itself. The term "wilful" is defined by Webster, as, obstinate, stubborn, inflexible, perverse, or governed by will without yielding to reason. The word as used in the criminal statutes has been variously said to mean, "with bad purpose," "an evil intent," "maliciously," "without ground for believing the act to be lawful." Other definitions might be added. *King* v. *State*, 103 *Ga.* 263 (30 S. E. 30) ; *Hateley* v. *State*, 118 *Ga.* 79 (2) (44 S. E. 852) ; *Black* v. *State*, 3 *Ga. App.* 297 (59 S. E. 823) ; *Kendall* v. *State*, 9 *Ga. App.* 794 (2) (72 S. E. 164) ; Potter v. United States, 155 U. S. 438 (15 Sup. Ct. 144, 39 L. ed. 214).

The violation of a criminal law enjoining upon individuals or the public a duty of diligence will, of course, amount to negligence where it results in injury to the person or property of another, but contributory negligence by an employee is not a ground for defeating compensation under the workmen's compensation act. Besides, "wilful misconduct" or "wilful failure or refusal to perform a duty required by statute" means something more than mere negligence. These terms as used in the compensation act contemplate the intentional doing of something with knowledge that it is likely to result in serious injury, or with wanton and reckless disregard to its probable consequences. Further than this no precise or comprehensive definition is necessary or will be attempted in the present case. It seems, however, that no act or omission on the part of the employee should be classified as wilful "unless the evidence indicates 'that entire absence of care which would raise the pre-

sumption of conscious indifference,' or that, with reckless indifference, the person acted with actual or imputed knowledge that the inevitable or probable consequences of his conduct would be to inflict injury." *Harris* v. *Reid,* 30 *Ga. App.* 187 (2) (117 S. E. 256).

In *Herrington* v. *State,* 121 *Ga.* 141 (48 S. E. 908), an indictment for pointing a pistol was held fatally defective because it did not contain the word "intentional," in conformity with the statute. Under section 116 of the Penal Code, making it a crime for a father to abandon his child, where he leaves it in a dependent condition, an indictment would be insufficient and bad if it failed to allege that such abandonment was wilful. *McDaniel* v. *Campbell,* 78 *Ga.* 188 (2). So, in a case like the present, compensation should not be denied unless there is evidence, either direct or circumstantial, to show, as an essential ingredient of the defense, the wilful character of the act or omission in question.

Again, in *Georgia Ry. & Power Co.* v. *Reid,* 26 *Ga. App.* 720, 724 (107 S. E. 100), this court held as follows: "One who commits an act of negligence in violating a penal statute in the State may be called upon to account to the State criminally for the offense, but in so far as injury results to another from such violation the question is simply one of negligence and its proximate results. In other words, where a person violates a penal statute, so far as the individual is concerned, and injury results therefrom, he is guilty of no more than simple negligence, and his offense is not necessarily aggravated by the fact that the negligent act which caused the injury was due to a violation of a penal statute. A tort committed by the violation of a penal statute is not necessarily a greater tort, so far as the injured individual is concerned, than a tort resulting from the failure to exercise such care and diligence as the law requires under the particular facts of the case." See also *Schofield* v. *Hatfield,* 25 *Ga. App.* 513 (103 S. E. 732).

In *Louisville & Nashville R. Co.* v. *Stafford,* 146 *Ga.* 206 (91 S. E. 29), the Supreme Court said: "The railroad company might be negligent per se in violating the city ordinance and the statute in regard to running trains over public crossings, and the plaintiff might be negligent per se in violating the statute in regard to running automobiles while approaching and crossing railroad-tracks, but it would not necessarily follow that the negligence of the plain-

tiff would be the proximate cause of the injury, or that it would be as great as that of the defendant, or that the plaintiff by the exercise of ordinary care could have avoided the consequence of the defendant's negligence after it commenced or became apparent, or the circumstances would have afforded reason to apprehend its existence. The question of negligence and the degree of negligence of the respective parties would be for the jury under the particular facts. The railroad company could be guilty of negligence per se, under the city ordinance, in failing to toll the bell and in running its train over the crossing at a speed slightly over five miles per hour; but the jury could say that it would be guilty of a greater degree of negligence by failing to toll the bell, and in running the train over the crossing at twenty-five or thirty miles per hour. And the plaintiff would be guilty of negligence per se in approaching the crossing at a greater rate of speed than the statute prescribed, but the degree of his negligence would in all cases depend on the circumstances. If there was no train in the vicinity, no danger from disobeying the statute would exist. If not otherwise negligent, his negligence would consist in disobeying the statute. As the circumstances might enhance the danger his negligence would increase; but whether it should bar a recovery under the circumstances must be left to the jury. So also the time when the negligence of the defendant came into existence and was apparent or should have been apprehended, and whether after it became so the plaintiff by the exercise of ordinary care could have avoided the consequences thereof to himself, were questions for the jury."

If these principles are applicable in an ordinary suit for damages, they can not reasonably be less so in a case under the workmen's compensation act. In the one case the negligence of the plaintiff or person injured may amount to a partial or an absolute defense. In the other case the mere negligence of the employee is immaterial. *Critchfield* v. *Aikin*, 33 *Ga. App.* 668 (2) (127 S. E. 816). It seems to us that the fact that the employee was violating a statute should be regarded only as a circumstance to be considered with the other facts and circumstances in determining whether he was guilty of wilful misconduct.

If this were not the law, then, as was well suggested by counsel for the plaintiff in error, the violation of the most trivial governmental regulation might result in barring compensation upon a

claim otherwise entirely meritorious. Certainly an employee should not go uncompensated merely because his injury resulted from such a minor offense as "jay-walking" contrary to municipal ordinance. Forfeitures are not favored, and valuable rights existing under a contract of employment should not be held lost solely because the employee was killed or injured while violating some criminal law having no specific reference to his own particular line of business, and intended simply to regulate the conduct of the general public as to travel upon the highways. *Roby* v. *Newton,* 121 *Ga.* 679, 683 (49 S. E. 694, 68 L. R. A. 601).

A number of decisions have been cited by counsel for the defendant in error. These were relied upon in the very lucid opinion of Commissioner Norman, in which he held that the death was not compensable. Fournier *v.* Androscoggin Mills, 120 Me. 236 (113 Atl. 270, 23 A. L. R. 1156); Fortin *v.* Beaver Coal Co., 217 Mich. 508 (187 N. W. 352, 23 A. L. R. 1153); Fidelity & Deposit Co. *v.* Industrial Accident Commission, 171 Cal. 728 (154 Pac. 834, L. R. A. 1916D, 903); Moore *v.* Donally, 1 A. C. (Eng.) 329.

We are unable to distinguish the case of Fidelity & Deposit Co. *v.* Industrial Accident Commission, supra, from the case at bar. Whether this should be true also as to the other cases cited, we are not content to follow them to the extent of denying compensation in the present case. Compare Clem *v.* Chalmers Motor Co., 178 Mich. 340 (144 N. W. 848, L. R. A. 1916A, 352); Estler *v.* Phillips, 91 L. J. K. B. N. S. 470 (23 A. L. R. 1148); Wick *v.* Gunn, 66 Okla. 316 (169 Pac. 1087, 4 A. L. R. 107); Alexander *v.* Industrial Commission, 281 Ill. 201 (117 N. E. 1040); Union Colliery Co. *v.* Industrial Commission, 298 Ill. 561 (132 N. E. 208, 23 A. L. R. 1150). We cited Fidelity & Deposit Co. *v.* Industrial Accident Commission, supra, in our decision in *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682, 687 (118 S. E. 786), but in that connection we did not commit ourselves to the soundness of the rulings made in that case.

The claim for compensation should not be refused upon the theory that Carroll, in the violation of the statute, severed his relation as an employee. *Central of Georgia Ry. Co.* v. *Brown,* 113 *Ga.* 414 (38 S. E. 989, 84 Am. St. R. 250); *Fielder* v. *Davison,* 139 *Ga.* 509 (77 S. E. 618). The decedent was not outside the sphere of his employment at the time of the accident. He was

doing nothing that was prohibited by either his employer or the State, but was doing a *permitted* act in a *prohibited* manner. He was thus in the course of his employment. See Fortin *v.* Beaver Coal Co., supra. Nothing contrary to the views herein expressed was held by the Supreme Court in *Metropolitan Casualty Co.* v. *Huhn,* 165 *Ga.* 667 (7, 8) (142 S. E. 121).

In what has been said above we have had in mind that the statute violated was in its nature a general one, not having been enacted to control the conduct of those engaged in the particular kind of business in which the decedent was employed, but to regulate the conduct of the public in general; that its violation amounted only to a misdemeanor, and that the things prohibited were not morally wrong. Such being the case, our decision is intended to be limited accordingly. What we should rule under other circumstances is another bridge, to be crossed only when it is reached.

The industrial commission erred in holding in effect that merely because Carroll was killed in the violation of a criminal statute his dependents were not entitled to compensation. It follows that the superior court should have sustained the claimant's appeal.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*

### ON MOTION FOR REHEARING.

BELL, J. The motion for a rehearing is based upon a number of grounds, but the chief complaint seems to be that in that part of our decision in which we held that the industrial commission made no finding of fact as to the speed at which the employee was traveling or as to his control of the vehicle, except that in each respect he was violating the law, we placed too narrow a construction upon the findings and conclusions of that tribunal. The movant's contention is, in substance, that the commission predicated its ultimate conclusion upon the combined facts of the case, and that its denial of compensation was tantamount to a finding from all the evidence that the employee was guilty of wilful misconduct within the meaning of section 14 of the compensation act. While we may have been incorrect in stating that the commission made no findings of fact other than those indicated above, we remain unchanged in our opinion that compensation was denied merely because the industrial commission entertained the view that the act of the employee in violating the law constituted within itself such wilful misconduct as to defeat the claim, irrespective of any other

facts which the commission may have found to exist. From the findings made and from the opinion delivered in connection therewith, we continue to think that the commission deemed such transgression to be the governing factor, and either excluded all other facts from consideration or (what was the same thing) treated them as unnecessary in establishing the defense.

Without proceeding to any lengthy discussion, we may say a few words in support of this interpretation of the commission's action. After briefly stating the case and setting forth the nature of the defense made, the commission said: "This defense raises two questions,—one of fact and one of law. First, did Carroll's death result from a violation of said statute? Second, if it did, does such act bar his dependents from compensation?" Then follows an opinion containing two divisions, devoted respectively to answering the questions thus propounded. The first division concludes with this statement: "A careful consideration of the evidence and all the facts and circumstances impels the finding that Carroll did not have his car under control as contemplated by the statute, and that his speed in approaching the crossing was considerably in excess of ten miles per hour. It must also be held that the failure of Carroll to observe the statutory requirements in approaching a railroad crossing was the proximate cause of his death." The second division begins with the following question: "Does the fact that Carroll met his death while violating the statute regulating the speed and manner of approaching a railroad crossing bar his dependents from compensation?" It is apparent that the question which the commission then proposed to answer was whether the mere fact that the employee was violating. the law should be controlling and operate to bar compensation. The argument which followed was obviously intended to sustain the affirmative of this question, concluding with this statement: "Under the facts in this case and the plain terms of the statute, it is the opinion of the commissioner that no recovery can be had. Compensation is therefore denied." If we considered only the final statement in each division of the commission's opinion, or considered both statements together, without examining the opinion as a whole, it might possibly be inferred that the commission's finding that the decedent was guilty of wilful misconduct was an inference which it had drawn from all the facts and circumstances; but

we can not so interpret the award when we consider all that the commission said in rendering it. We still think that the commission intended to hold, and did hold, that the mere violation of the penal statute constituted wilful misconduct in the sense of the compensation act, and we also adhere to the view as formerly expressed that such is not the law applicable to a case of this sort.

Upon the legal question involved the following cases, as at least analogous, may be cited, in addition to the authorities referred to in our original opinion: *Southern Railway Co.* v. *Davis,* 132 *Ga.* 812 (3) (65 S. E. 131); *Savannah Electric Co.* v. *Jackson,* 132 *Ga.* 559 (64 S. E. 680); *Chattanooga &c. R. Co.* v. *Liddell,* 85 *Ga.* 482 (5) (11 S. E. 853, 21 Am. St. R. 169); *Lanier* v. *Bugg,* 32 *Ga. App.* 294 (3) (123 S. E. 145). In the *Davis* case the plaintiff brought suit to recover damages for injuries alleged to have been caused by certain acts of the railway company committed in violation of the public-crossing law. After verdict for the plaintiff the Supreme Court, in holding that there was no evidence to authorize an instruction upon the subject of punitive damages, said: "There must be something more than the mere proof of failure to give a statutory signal or make a stop required by a statute in approaching a crossing. There must be affirmative evidence of facts tending to show wilfulness, wantonness, or the existence of particular circumstances from which an inference of a conscious indifference to consequences might legitimately be drawn. And these facts must be shown in addition to the mere omission to give statutory signals or take statutory precautions in approaching crossings. If this be not the law, then practically every case of negligent injury can be made the vehicle of submitting to the jury the question of wilfulness and wantonness, by merely using adjectives in describing the character of the negligence." See also, in this connection, *Ely* v. *O'Dell,* 146 Wash. 667 (264 Pac. 715, 57 A. L. R. 151). In that case it was held that an injury caused by an automobilist while driving a car in a manner prohibited by municipal ordinance is not within the provision of the bankruptcy act denying discharge from liabilities arising from wilful and malicious injuries to the person and property of another. The decision contains a discussion, with a citation of authorities, and has, as we think, some relevancy, in the present inquiry.

*Rehearing denied. Jenkins, P. J., and Stephens, J., concur.*